**Isaac WILLIAMS, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 18462.**

United States Court of Appeals District of Columbia Circuit.

Argued June 10, 1964.

Decided Oct. 1, 1964.

Mr. Vance A. Fisher, Washington, D. C., with whom Mr. John B. Denniston, Washington, D. C., (both appointed by this court), and Mr. George Blow, Washington, D. C., were on the brief, for appellant.

Mr. B. Michael Rauh, Washington, D. C., with whom Messrs. David C. Acheson, U. S. Atty., and Frank Q. Nebeker, Asst. U. S. Atty., were on the brief, for appellee.

Before WILBUR K. MILLER, FAHY, and McGOWAN, Circuit Judges.

FAHY, Circuit Judge:

In Williams v. United States, 117 U.S. App.D.C. 206, 328 F.2d 178 (1963), on appeal from this appellant's conviction of assault with a dangerous weapon, we remanded the case to the District Court for further proceedings consistent with the decision of the Supreme Court in Campbell v. United States, 365 U.S. 85, 81 S.Ct. 421, 5 L.Ed.2d 428, (1961), and our cases of Saunders v. United States, 114 U.S.App.D.C. 345, 348, 316 F.2d 346, 349 (1963), and Hilliard v. United States, 115 U.S.App.D.C. 86, 317 F.2d 150, 151 (1963). The purpose was to have an inquiry by the court as to the producibility under the Jencks Act, 18 U.S.C. § 3500(e) (2) (1958) of statements of Thomas Butler and Pauline Smith, who had testified for the prosecution. Their statements had been given to a clerk of a grand jury unit of the United States Attorney's office, herein as a matter of convenience referred to as the clerk, an agent of the government. The statements were transcribed by the clerk in typewriting during the interviews. The court had denied defense counsel's request for their production, made after the witnesses had testified on direct examination. The court ruled the statements were not substantially verbatim accounts of what the witnesses had said to the clerk, adding that they were in no way inconsistent with their testimony at the trial. We held that if they were substantially verbatim recitals they were producible, unless no prejudice resulted from non-production. An appropriate judicial inquiry into producibility not having been held we remanded, the fate of the conviction to depend upon the result of such an inquiry.

On the remand the required hearing was held. The court found, and it is not contested, that the statements were recorded contemporaneously with their making. But the court also found that they are not substantially verbatim, are merely summaries of the witnesses' accounts of the crime, contain only the substance and highlights of the accounts given to the clerk by the witnesses, and,

also, that in any event the failure to produce was not prejudicial to appellant. The court accordingly ruled that the judgment of conviction should stand. The case is now before us on appeal from this ruling.

With all deference we are unable to agree that defense counsel was not entitled to the statements in aid of his conduct of the defense. Since it is not disputed the statements met the requirement of the Jencks Act as having been "recorded contemporaneously" with their making, the issues are whether they were "substantially verbatim" recitals and, if so, whether the failure to make them available to the defense was harmless.

█ I. A perusal of the statements strongly indicates that they set forth a running account of what the witnesses said to the clerk, though transcribed largely in the third person. The transcription is a graphic description of events upon the basis of which the indictment was returned and the trial proceeded. It contains idiomatic language, at one point set off by quotation marks, indicative of verbatim transcription, with abbreviations to aid in the expedition of transcription; and on their face the statements appear to be complete.

It is true that at the hearing on remand the clerk testified the statements were "my version" of what the witnesses told him, but this we interpret in the context of the clerk's testimony as a whole, from which it appears he meant that when the witness said, for example, "I hit" him, the clerk transcribed it "He hit" him. He said that normally he talks to the witness, then turns around and writes "his version" of what the oral statement was. Butler and Smith both testified that the clerk was typing while they were giving their statements.

It was brought out that the clerk held Bachelor of Arts and Bachelor of Law

degrees, that he considers the statements he obtains from such grand jury witnesses important for the purpose of affording the staff of the United States Attorney's office opportunity to know what the case is all about in presenting it before the grand jury and, if the case advances to indictment, to give the one who prepares the indictment the necessary information; that the clerk tries to be accurate in taking down the essentials; and that to him "substantially verbatim" means "exactly," "word for word," "every i and every t." This, however, is really "precisely verbatim," a degree of accuracy which the Jencks rule does not require as a condition to producibility. In taking these statements the clerk further testified he gets down the essential part, the heart of the testimony, tries to put down the substance of the witnesses' testimony, and everything in the statement is something the witnesses said.[1] Toward the end of the clerk's testimony the court said to him, "As I gather it, detail, in the sense of minutia, you don't bother with it. You want to get the basic facts." The clerk answered, "That is correct, Your Honor."

In Palermo v. United States, 360 U.S. 343, 350, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959), it is said that in determining the producibility of statements under the Jencks Act the issue is whether a statement can be fairly said to be the witness' own so that it would not be unfair to allow the defense to use it to impeach the witness. Clearly, it seems to us, this test is here met. To repeat, "substantially verbatim" does not mean "precisely verbatim."

█ The Government suggests several factors by which to judge whether a statement comes within the Jencks Act: (1) the extent to which it conforms to the language of the witness; (2) its length in comparison with the

---

1. The evidence further shows that to make the transcription of Mr. Butler's statement conform more accurately to what the witness had said the clerk corrected his transcription by changing the sentence, "then at one time he threw a glass of beer on the floor and broke the bottle and glass," to read "then at one time he threw a glass of beer on the floor and the bottle too."

length of the interview; (3) the lapse of time between the interview and its transcription; (4) the appearance of the substance of the witness' remarks; (5) the use of quotation marks; and (6) the presence of the comments or ideas of the interviewer. These are guidelines to aid in the application of the test announced in *Palermo,* and it is not suggested that the cases cited to support the importance of these factors require conformity with each. Nevertheless we think their application to the present case supports the producible character of the statements. We also give weight to the trial court's findings of the purposes for which the statements were obtained, to give the United States Attorney presenting the case before the grand jury an idea of exactly what information the witness had, to provide the indictment writer and the government's trial attorney with accurate information and also, on occasion, to provide a means for impeaching a witness who changes his testimony.

The knowledge of the clerk of the use to be made of the statements tends to support their accuracy. That this is so is illustrated by a change he made in one of the statements to insure accuracy. See note 1, *supra.* The testimony as to how the statements were contemporaneously recorded also lends support to the view they were substantially verbatim, as does a comparison between the length of the statements in relation to the probable length of the interviews. The trial court found, moreover, that the clerk would not change a witness' words where to do so would materially alter the purport of the witness' statement, and, finally, the ungrammatical construction of the sentences, contrasting with the educational qualifications of the clerk, indicates he was making substantially verbatim transcriptions.

II. On this review we may not rule against the findings of fact of the trial judge unless we conclude they are clearly erroneous. Campbell v. United States, 373 U.S. 487, 493, 83 S.Ct. 1356, 10 L.Ed.2d 501 (1963); Palermo v. United States, *supra,* 360 U.S. at 353, 79 S.Ct. 1217. However, a finding that written statements are or are not producible under the Jencks Act as substantially verbatim recitals of witnesses' oral statements is not an ordinary finding of fact; it is a factual conclusion arrived at by applying a legal standard to the other facts found. To the extent that this conclusion is based upon the application of an erroneous rule of law or is inconsistent with the facts upon which it purports to rest then it is clearly erroneous. In holding, as we do, that the trial court erred in finding that the statements were not producible, we accept the court's basic findings of fact. We do not accept, however, the court's finding that the statements were "not substantially verbatim, but were merely [the clerk's] summary of the witnesses accounts." Such a conclusion, we think, is the result of the application of an erroneous legal standard, and is inconsistent with the subsidiary findings upon which it is based and the evidence as a whole. We keep in mind, in the practical application of the Jencks Act, "The command of the statute is * * * designed to further the fair and just administration of criminal justice, a goal of which the judiciary is the special guardian." Campbell v. United States, 365 U.S. 85, 92, 81 S.Ct. 421, 425, 5 L.Ed.2d 428.

Being clear, but with deference, that the statements are producible under the Act,[2] we conclude that the conviction must be set aside and a new trial granted, unless the error in not requiring production was harmless, a question we now consider.

2. As we pointed out in our first opinion in this case, the producibility of the statements is not affected by the self-serving declaration found at the top of each stating that: "The following is a summary of the witness conversation not read to or by the witness it is not intended to be a substantially verbatim account—ws." (Lack of punctuation as in original.) See Williams v. United States, *supra,* 328 F.2d at 180.

III. The case is unlike Rosenberg v. United States, 360 U.S. 367, 79 S.Ct. 1231, 3 L.Ed.2d 1304 (1959), where the error of the trial court in not making a producible statement available was held to be harmless because the same information was available to the defense in another form. The statement involved was a letter of the witness written prior to trial stating that in order to refresh her failing memory she would need to reread the original statement she had given to the F.B.I. Thus in *Rosenberg* the subject matter of the statement was the single fact of loss of recollection. As the Court pointed out,

> "[T]he same information which was contained in the letter was revealed to defendant's counsel by statements made by [the witness] under cross-examination and upon questioning by the trial judge."

360 U.S. at 370, 79 S.Ct. at 1234. In our case, however, the producible statements contain a running account of the events surrounding the commission of an alleged offense, not an isolated item of information otherwise obtained by defense counsel.

The issue of credibility of the witnesses for the defense vis-a-vis those for the prosecution was important. Defendant took the stand and gave quite a different version from that given by Butler and Smith of the events which led to his indictment. His testimony was corroborated by that of another witness. If believed this version of the affair might have persuaded the jury that Butler, who in fact shot the defendant but claimed to have done so to protect one Hicklin from an attack by defendant, was not to be believed, and that the facts did not require conviction of defendant. We do not intimate that the jury would have so concluded. If there were discrepancies between the statements and the testimony of Butler and Smith given at the trial, as we find to be the case, then the failure to make the statements available to defense counsel deprived him of the right effectively to conduct the defense as contemplated by the Jencks rule.

There were a number of such discrepancies. Both Butler and Smith testified defendant hit Hicklin only once with a bar stool, whereas both said in their statements that defendant hit Hicklin a second time with the bar stool. In this respect the statements may have been more favorable to defendant than the witnesses' trial testimony, but this is not decisive under the Jencks Act. The issue is whether counsel should have had the choice of using the statements to test the witnesses' credibility; that is, in the present context, to test whether the witnesses gave true accounts of what occurred. This should be considered along with the defendant's testimony that he was chased out of the bar by Butler who was brandishing a pistol and that if he, the defendant, hit Hicklin at all it was by bumping him when he was trying to get out the door.[3]

The error, therefore, in denying the request of the defense for production of the statements was not harmless. See Clancy v. United States, 365 U.S. 312, 81 S.Ct. 645, 5 L.Ed.2d 574 (1961), where the Court said:

> "Since the production of at least some of the statements withheld was a right of the defense, it is not for us to speculate whether they could have been utilized effectively. As we said in Jencks v. United States, supra, 353 U.S. [657] 667, 77 S.Ct. [1007] 1013 [1 L.Ed.2d 1103]:
>
> "'Flat contradiction between the witness' testimony and the version of the events given in his report

3. There are other discrepancies. As examples, Butler on the stand placed defendant's arrival at the grill "around about five o'clock" whereas in his statement he placed it "starting at 7 PM"; Butler testified that he had always liked defendant and had no grudge against him, but in his statement he referred to him as a "member of a gang that buys whiskey outside and drinks same in the streets * * * and then comes into the grill and starts trouble," that he had told him to get out and that "he did not want him in there."

is not .the only test of inconsistency. The omission from the reports of facts related at the trial, or a contrast in emphasis upon the same facts, even a different order of treatment, are also relevant to the cross-examining process of testing the credibility of a witness' trial testimony.' "

365 U.S. at 316, 81 S.Ct. at 648.

Reversed and remanded for proceedings not inconsistent herewith.

WILBUR K. MILLER, Circuit Judge (dissenting):

Whether the majority are correct in holding Stitely's summaries of his interviews with the prospective Government witnesses, Butler and Smith, were producible under the Jencks Act[1] depends upon whether the summaries are "statements" as that statutory term is defined in subsection (e) of the Act, which is as follows:

"(e) The term 'statement', as used in subsections (b), (c), and (d) of this section in relation to any witness called by the United States, means—

"(1) a written statement made by said witness and signed or otherwise adopted or approved by him; or

"(2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness to an agent of the Government and recorded contemporaneously with the making of such oral statement."

Admittedly, the summaries are not written statements made by the witnesses and signed or otherwise adopted or approved by them, so they are not "statements" as defined in paragraph (1) of subsection (e). It follows that the Stitley summaries can be held to have been producible only under paragraph (2) of subsection (e); that is, if

they are recordings (or transcriptions of recordings) which are "substantially verbatim" recitals of oral statements made by Butler and Smith to Stitely and recorded contemporaneously by him. The majority analyze the Stitely summaries and then hold they are "statements" under paragraph (2), but they do not reproduce them. As I think the structure and language of the summaries show they are not such "statements," I quote them exactly as they were typed by Mr. Stitely:

"Roy T. Butler res 4013 Clay Pl N.E. Ph 5813471

"Bus Owner of 'Starlight Grill, 436 L Street N.W.) Ph Ex 38834

"The following is a summary of the witness conversation not read to or by the witness it is not intended to be a substantially verbatim account—ws. [Stitely's initials.]

"He was working the bar of his Grill at about this time, 10:55 PM. Feb. 9, 1963, and Dft Isaac Williams is a member of a gang that buys whiskey outside and drinks same in the streets and alleys and then comes into the grill and starts trouble and on this occasion he came into the grill starting around 7 PM. and he was in and out and he would not obey the rules and regulations of the grill and he hit an old colored lady several times—she came there to buy and drink wine—and Mr. Butler told him to get out of the place that he did not want him in there and he then said 'you bad SB you put me out—and he came up to the bar and tore his shirt open and said he was a bad SB. Then at one time he threw a glass of beer on the floor and the bottle too.

"Then customer Charles R. Hicklin came into the place and he sit on the bar stool near the cash register—and Dft Williams just looked at Hicklin—there were no words passed between—and suddenly Dft

1. 18 U.S.C. § 3500, 71 STAT. 595 (1957).

Williams picked up a beer bottle with some beer in it and struck cpl Hicklin on his head with a severe blow and it broke the bottle and then he grabbed the bar stool and started to hit cpl Hicklin with that—and that is went [when] Mr. Butler grabbed his gun and fired one shot thru the mirror just to frighten Dft Williams and then Dft Williams goes back again and hit Hicklin, who was down on the floor, with the bar stool a second time (Bar stool is made of steel and it is detachable—it is still at the grill and available as evidence—it was at this point that Mr. Butler took his pistol and actually shot Dft Williams hitting Williams with the bullet on the left side of his body. Then after Williams got shot he crawled on out of the place on the sidewalk—and he looked back and said to Mr. Butler you MF I am going to get you.

"Then police came on the scene and took Hicklin to the Hosp—also took Williams to the Hosp.

"NOTE: Dft Williams has done this sort of thing before in the Grill—he gave Mr. Butler a lot of trouble from time to time."

"Mrs. Pauline Smith res 613 K Street N.E. Ph 5442081

"Bus Waitress—Starlight Grill, 436 L St N.W.D.C.

"The following is a summary of the witness conversation not read to or by the wit it is not intended to be a substantially verbatim account—ws.

"The substance of her statement or conversation is that she was present working as a waitress and she saw Williams acting up in the grill during the early evening of Feb 9, 1963, and Mr. Butler the owner was there trying to quiet him down and told him to leave on several different occasions—and she saw him hit the old colored lady in the place too. She witnessed all of Williams bad conduct in the place at this time.

Then when Hicklin came into the place—there was no words passed between them and she saw Williams pick up the bottle and hit Hicklin over his head with it and the bottle broke—and Williams held the jagged end of the bottle and stabbed and cut Hicklin with same on the side of his head—and when the jagged end of the bottle got too short from using it on Hicklin he, Williams, picked up the Bar Stool and hit Hicklin who was then down on the floor, and when Williams hit Hicklin a second time with the bar stool Mr. Butler shot him with the pistol. And as Williams was crawling out the door after being shot he looked back and told Mr. Butler he was going to get him.

"Police were notified and responded and took charge of the situation."

The question is whether summaries such as these, which do not purport to be substantially verbatim recitals of oral statements made by the witnesses and which indeed show by their terms they are not such recitals, are correctly classified by the majority as "statements" within the meaning of paragraph (2) of the statutory definition of that term.

With respect to the summaries, the trial judge made the following findings of fact after the hearing on remand:

"19. The evidence shows that the statements taken by Mr. Stitely were not substantially verbatim, but were merely Mr. Stitely's summary of the witnesses' accounts of the crime and contained only the substance, essentials and highlights of the account. The statements were written in a third person narrative, and not in the language of witnesses Butler or Smith, except where quotation marks appear. Mr. Stitely never records anything that the witness does not say and never changes the witnesses' wording where to do so would materially alter the purpose of the witnesses' statement. It was not the intention of the Clerk to take full detailed statements, but

only sufficient facts so that the Assistant United States Attorney appearing before the Grand Jury could make an orderly presentation.

"20. The statements of Mr. Butler and Mrs. Smith, as recorded by Mr. Stitely (Exhibits 3 and 4) were read to the witnesses at the hearing before this Court. Each witness testified that his respective statement represented the substance of what he had told Mr. Stitely. Mrs. Smith qualified her testimony by noting that her statement did not contain one item that she recalled she narrated to Mr. Stitely: the fact that Butler had fired a warning shot into the mirror prior to shooting Williams."

By holding that the summaries are substantially verbatim recitals of the witnesses' interviews with Stitely, the majority, in effect, say findings 19 and 20 are clearly erroneous, and substitute for them their own contrary findings. I suggest that no amount of analysis by the majority can show the above quoted summaries to be substantially verbatim recitals of the oral statements made to Stitely. My opinion is that the findings of the able and experienced trial judge are not clearly erroneous but clearly correct, and that, therefore, we are bound by them even though some of us would have made different findings from the evidence.

It will be observed that Mr. Stitely noted in each summary that "it is not intended to be a substantially verbatim account," and appended his initials to the notes. His statement is amply borne out, as I have said, by the summaries themselves. Plainly, they contain simply the substance of the interviews as recorded in Stitely's language—not that of the witnesses. The presence of the two brief sentences attributed by Stitely to the witness Butler emphasizes the fact that the remainder of the Butler sum-

mary—practically all of it—was not verbatim, or even substantially so.

"Verbatim" means "word for word" or "in the same words." The adverb "substantially," in the sense it is used in the term "substantially verbatim," is defined thus:[2]

"4. In all essential characters or features; in regard to everything material; in essentials; to all intents and purposes; in the main."

So, the statutory term "substantially verbatim" means "word for word in all essentials, in everything material, to all intents and purposes." I suggest that one who reads the summaries with the foregoing definition in mind will realize immediately that they are not "substantially verbatim" recitals of oral statements made by the prospective witnesses.

That Congress did not intend the Jencks Act definition of the word "statement" to include documents such as are now being considered is shown by the legislative history of the Act. The Senate version of the bill extended the types of statements covered to include "transcriptions or records of oral statements" made by the witness to an agent of the Government. Had the legislation passed in that form, the Stitely summaries probably could be held to have been producible. But the bill did not pass in that form. The House conferees insisted that a document not signed or otherwise adopted or approved by the witness should not be a producible statement unless it were a substantially verbatim recital of an oral statement made by the witness. This appears in the following paragraph of the Conference Report made by the House managers:[3]

"Another difference discussed by the conferees concerned the provisions of the Senate bill, which extended the types of statements covered by the bill to include 'transcriptions or records of oral statements' made by the witness to an

---

2. The Oxford English Dictionary, v. X (1933).

3. 2 U.S.Code Cong. & Ad.News, p. 1870 (85th Cong., 1st Sess. 1957).

agent of the Government. To remove any doubt as to the kinds of statements affected by the bill as agreed to by the conferees, a new paragraph 'e' was added to the proposed section 3500 of title 18 of the United States Code expressly defining the term 'statement'."

So, the Senate definition of the word "statement" was rejected, and the much more restricted definition proposed by the House was included in the statute finally adopted. My colleagues push the Jencks Act much further than Congress intended. They construe it as though the definition of "statement" in the Senate version of the bill had become law. I think it quite clear that the summaries were not producible.

Having held that the District Court erred in refusing to require production of the summaries, the majority further hold that the error was not harmless like that in the *Rosenberg* case,[4] but prejudiced appellant by depriving him "of the right effectively to conduct the defense as contemplated by the Jencks rule." The majority's idea that appellant was prejudiced is based solely on their statement that there were discrepancies between the summaries and the testimony of Butler and Smith given at the trial. I suppose they mean that, had the summaries been made available to appellant at the trial, he could have used them effectively in the cross-examination of Butler and Smith for impeachment purposes.

That might have been possible if there actually were discrepancies between the summaries and the testimony of the two witnesses. I have carefully compared the summaries with the trial testimony, and I find no discrepancies between them. To be sure, there are differences: the testimony was quite detailed, for it covers many pages of the reporter's transcript, while each summary is on a single page. This was recognized by the trial judge in his finding that "Any discrepancies are attributable to the incomplete nature of the statements recorded by Mr. Stitely."

A discrepancy would not have aided appellant in attempting to impeach Butler and Smith unless it had been more than a mere difference—unless it had amounted to a disagreement, a discordance, or a variance. None such appears here. The majority recite three differences between the summaries and the testimony which they say are "discrepancies": (a) that the summaries said the appellant struck his victim twice with a bar stool, while the witnesses testified that he struck him only once with the stool; (b) that the summary of Butler's interview said appellant arrived at the bar "starting at 7 PM," while he testified that it was "around about five o'clock"; (c) that Stitely's summary of Butler's interview said appellant was a trouble-maker, while Butler testified he had always liked appellant and had no grudge against him. These are points of difference but they are not discrepancies which could have enabled appellant to impeach Butler and Smith on cross-examination. The exact hour of appellant's arrival at the bar and whether he struck his victim once or twice with the bar stool seem to me to be of little moment. And there is nothing inconsistent between Stitely's Butler summary that appellant was a trouble-maker, and Butler's testimony that he had no grudge against him.

I find nothing substantial in the summaries which was not in the testimony of Butler and Smith at the trial. Hence, requiring production of the summaries would have given the appellant no information in addition to that which he obtained from the direct examination of the witnesses. That being true, the following language of Mr. Justice Frankfurter in the *Rosenberg* case, *supra*, 360 U.S. at page 371, 79 S.Ct. at page 1234, is particularly applicable here:

" * * * However, when the very same information was possessed by defendant's counsel as would have been available were error not committed, it would offend common sense and the fair administration of jus-

4. Rosenberg v. United States, 360 U.S. 367, 79 S.Ct. 1231, 3 L.Ed.2d 1304 (1959).

tice to order a new trial. There is such a thing as harmless error and this clearly was such. * * *"

The majority's quotation from the *Clancy* case,[5] which in turn quotes from the earlier *Jencks* case, does not help them; for here there was not only no flat contradiction between the summaries and the testimony, but also there was no omission from the summaries of salient facts related at the trial, no "contrast in emphasis upon the same facts," and no "different order of treatment." There is simply nothing in the Stitely summaries which would have aided in the cross-examining process of testing the credibility of trial testimony. Moreover, their *Clancy* quotation is a bit of *obiter dictum*, for the Supreme Court did not reach the harmless error point in that case, as its opinion shows, 365 U.S. at page 316, 81 S.Ct. at page 648

> "We put to one side *Rosenberg* v. *United States*, 360 U.S. 367, 79 S.Ct. 1231, 3 L.Ed.2d 1304, where a failure to produce a document was considered to be harmless error under the particular circumstances of that case. *We do not reach the harmless error point* because, if applicable, it is relevant only to the report of one of the agents, not to those of the other two. * * * (Emphasis added.)

But here, there was no information in the summaries which had not been obtained by the appellant from the direct testimony of the two witnesses, as I have said. As in the *Rosenberg* case, the information in the documents withheld was otherwise conveyed to the appellant. Hence, we cannot "put to one side" the *Rosenberg* case, as the Supreme Court did in the *Clancy* opinion. The particular circumstances which justified the *Rosenberg* ruling of harmless error are similar to the circumstances of this case.

On the question whether the appellant was prejudiced because the summaries were not made available to him, District Judge Schweinhaut made these specific findings of fact:

> "23. The failure to produce Exhibits 3 and 4 for use of defense counsel during the trial was not prejudicial to defendant.

> "24. The witnesses' statements before Mr. Stitely, the Grand Jury, the petit jury and this Court are not significantly different. Any discrepancies are attributable to the incomplete nature of the statements recorded by Mr. Stitely.

> "25. The evidence shows that impeachment of either witnesses Butler's or Smith's credibility at trial could not have been accomplished by the use of the statements (Exhibits #3 and 4)."

I think it significant that when the summaries were requested by the defendant at the trial, the judge examined them and said:

> "* * * They are written in summary form. That doesn't come under the Jencks rule. I looked at them while I had it here, and none are in the first person, don't purport to be the statement in the language of the witness. The story is the same in substance."

Then, when counsel insisted that "being in the first person is only one of the criterion [*sic*]," the trial judge said:

> "* * * Here is what I think I better do, to save time, and it will serve your purpose. I will follow these statements as the witnesses testify. If I find anything inconsistent in this summary, I will let you know before you cross examine."

Hence, the trial judge was thoroughly familiar with the summaries and testimony and carefully compared them. At the hearing after remand, he again compared the summaries with testimony given by the witnesses on three occasions, and thereupon made the findings quoted above. I suggest that they are correct and controlling.

5. Clancy v. United States, 365 U.S. 312, 81 S.Ct. 645, 5 L.Ed.2d 574 (1961).

As the majority discern discrepancies which would have made the summaries useful to appellant for impeachment purposes, they are rejecting the quoted findings as clearly erroneous. As I have said, my opinion is that the record shows them to be clearly correct, and so I must dissent on the prejudice point as well as the issue of producibility.

All the findings of fact made by the trial judge and the conclusions of law he drew therefrom, which I think are accurate and correct, should be examined in the consideration of this case. For that reason, I append to this dissent the complete text of the findings and conclusions.

### APPENDIX

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

This matter having come before the Court on a remand from the Court of Appeals for the District of Columbia Circuit for further proceedings consistent with their opinion (*Williams* v. *United States,* 117 U.S.App.D.C. 206, 328 F.2d 178, decided December 12, 1963), evidence, testimony and argument by counsel having been adduced in open court, the Court makes the following Findings of Fact:

1. The defendant was convicted by a jury of assault with a dangerous weapon (22 D.C.CODE 502) and sentenced to imprisonment for a period of two or six years. From that judgment he appealed.

2. The Circuit Court of Appeals remanded the cause for a hearing to determine whether the statements of Roy Thomas Butler and Mrs. Pauline Smith, transcribed by the Grand Jury Clerk should have been produced at trial in accordance with the Jencks Act, 18 U.S.C. 3500, and if so whether failure to so produce was prejudicial to the defendant.

3. A full hearing was held on Friday, January 24, 1964, at which the defendant was present in open court and represented by three able court-appointed counsel. Five witnesses appeared and testified in the following order: (1) Mr. Donald S. Smith, Assistant United States Attorney, (2) Mr. Wilmer R. Stitely, Chief Clerk in the Grand Jury Division of the United States Attorney's Office, (3) Mr. Roy Thomas Butler, (4) Mrs. Pauline Smith, and (5) Mr. Robert X. Perry, Assistant United States Attorney.

4. Five documents were introduced and admitted into evidence as exhibits: (1) a blank Grand Jury Statement form No. USA–9x–65, (2) a blank Witness Attendance Certificate form No. USA–798, (3) the statement of Roy Thomas Butler, (4) the statement of Pauline Smith, and (5) the Government's trial folder.

5. When a case is scheduled for presentation to the Grand Jury, all witnesses are ordered to report beforehand to the office of the United States Attorney, Grand Jury Division.

6. There, their statement is taken by the Chief Clerk of the Grand Jury, Mr. Wilmer R. Stitely, or by one of his two assistants.

7. Mr. Alexander L. Stevas, when Assistant United States Attorney in charge of the Grand Jury Division, instructed Mr. Stitely and his assistants to type on the statement, Form No. USA–9x–65, the following: "The following is a summary of the witness' conversation not read to or by the witness. It is not intended to be a substantially verbatim account," followed by his initials.

8. The clerk sees all witnesses in one case in a group, but takes their statements individually.

9. Mr. Stitely will usually either type the statement in full after the witness has completed his statement or type a portion of it after the witness has partially completed his statement, completing the statement after the witness has given the remainder. One of these procedures was followed in this case and the witnesses remained in Mr. Stitely's office until he completed the statement he took from the witnesses.

10. The Assistant United States Attorney uses the statement as transcribed by the clerk to make an orderly presentation of the evidence to be offered through that witness to the Grand Jury.

11. The statements are taken by the Grand Jury Clerk for the following reasons:

(a) To aid the Assistant United States Attorney in presenting the case to the Grand Jury in an orderly fashion;

(b) To enable the indictment writer to properly draft the indictment, without the necessity of requiring the transcription of the Grand Jury testimony;

(c) To enable the Assistant United States Attorney, who is assigned to try the case, to prepare and present it in Court. The statements are, on occasion, used to impeach the witness.

12. Mr. Robert X. Perry presented this case to the Grand Jury (Exhibit 5). Should any inconsistencies, which Mr. Perry deemed material, have come to his attention, he would have corrected them. Mr. Perry made the following corrections, relative to the statements in question:

(a) The symbol for the Greek letter delta was inserted to indicate the defendant in line 8 of the first long paragraph of Mr. Butler's statement, next to the word "his".

(b) The abbreviation "MS" was changed to "MF".

13. In taking the statements it was not Mr. Stitely's intention to record an account which would be "substantially verbatim." By "substantially verbatim" he testified that he meant exactly identical.

14. Mr. Stitely has been employed by the United States Attorney's Office, Grand Jury Division, as a clerk for the past 33 years. He is presently the Chief Clerk and has so been for the last five years. Mr. Stitely is a graduate of the National Law School. His civil service classification is GS–9. His principle duties are the taking of statements of witnesses prior to their testifying before the Grand Jury. Exhibits 3 and 4, in this case, were taken by Mr. Stitely.

15. Mr. Stitely corrected the statement of Mr. Butler (Exhibit 3), by changing the sentence "then at one time he threw a glass of beer on the floor and broke the bottle and glass" to the following: "then at one time he threw a glass of beer on the floor and the bottle too." These were the only changes made by Mr. Stitely regarding Mr. Butler's statement, and were made on the typewriter.

16. Where the witness used obscene language, Mr. Stitely used abbreviations.

17. The evidence shows that the statements (Exhibits #3 and 4), taken by Mr. Stitely, were not read to or by Mr. Butler or Mrs. Smith, nor were they seen or signed by either witness, nor in any way adopted or approved by them, prior to trial.

18. The evidence shows that none of the handwritten notations on either statement (Exhibits #3 and 4) were those of either Mr. Butler or Mrs. Smith, but were the notes of Mr. Stitely and Mr. Perry.

19. The evidence shows that the statements taken by Mr. Stitely were not substantially verbatim, but were merely Mr. Stitely's summary of the witnesses accounts of the crime and contained only the substance, essentials and highlights of the account. The statements were written in a third person narrative, and not in the language of witnesses Butler or Smith, except where quotation marks appear. Mr. Stitely never records anything that the witness does not say and never changes the witnesses' wording where to do so would materially alter the purport of the witnesses' statement. It was not the intention of the Clerk to take full detailed statements, but only sufficient facts so that the Assistant United States Attorney appearing before the Grand Jury could make an orderly presentation.

20. The statements of Mr. Butler and Mrs. Smith, as recorded by Mr. Stitely (Exhibits #3 and 4) were read to the witnesses at the hearing before this Court. Each witness testified that his respective statement represented the substance of what he had told Mr. Stitely. Mrs. Smith qualified her testimony by noting that her statement did not contain

one item that she recalled she narrated to Mr. Stitely: the fact that Butler had fired a warning shot into the mirror prior to shooting Williams.

21. The witnesses Smith and Butler testified at the hearing before this Court as to their version of the occurrences on the evening of the alleged crime.

22. In this case, the record of the statement which Mrs. Smith gave to Mr. Stitely (Exhibits #3 and 4) recites that it is the "substance" of her testimony.

23. The failure to produce Exhibits 3 and 4 for use of defense counsel during the trial was not prejudicial to defendant.

24. The witnesses statements before Mr. Stitely, the Grand Jury, the petit jury and this Court are not significantly different. Any discrepancies are attributable to the incomplete nature of the statements recorded by Mr. Stitely.

25. The evidence shows that impeachment of either witnesses Butler's or Smith's credibility at trial could not have been accomplished by the use of the statements (Exhibits #3 and 4).

WHEREFORE, The Court concludes as a matter of law that:

1. The duty of determining whether or not statements are producible under the Jencks Act rests upon the Court.

2. Neither of the statements was read to or by the witnesses or signed or otherwise adopted by them within the meaning of Subsection (e) (1) of the Jencks Act, 18 U.S.C. § 3500, and thus were not producible at trial.

3. Both statements were "recorded contemporaneously" with their "making", however, neither was "a substantially verbatim recital of an oral statement made by" the witness within the meaning of Subsection (e) (2) of the Jencks Act, and thus were not producible at trial.

4. No prejudice resulted to the defendant as a result of not having the statements at trial (assuming *arguendo* they were producible).

5. The judgment of conviction and sentence should stand.

/s/ H. A. Schweinhaut,

Feb. 13, 1964            Judge