**UNITED STATES of America,**
**Appellee,**

v.

**Alfredo AVILES et al., Defendants-**
**Appellants.**

**No. 66, Docket 27377.**

United States Court of Appeals
Second Circuit.

Argued Dec. 18, 1962.

Decided March 8, 1963.

187

Roy L. Reardon, New York City, for appellant Barcellona.

Albert J. Krieger, New York City, for appellants Joseph Di Palermo, and Charles Di Palermo.

Maurice Edelbaum, New York City, for appellant Evola.

Edward Bennett Williams, Robert L. Weinberg, Washington, D. C.; Wilfred L. Davis, New York City, for appellant Genovese.

Wilfred L. Davis, New York City, for appellant Gigante.

Henry K. Chapman, New York City, for appellants Nicholas Lessa and Rocco Mazzi.

Allen S. Stim, New York City, for appellant Ralph Polizzano.

Herbert S. Siegal, for appellant Santora.

Vincent L. Broderick, U. S. Atty., Southern District of New York (Arnold N. Enker, Arthur I. Rosett, Richard A. Givens, Asst. U. S. Attys., of counsel), for appellee.

Before WATERMAN, MOORE, and MARSHALL, Circuit Judges.

WATERMAN, Circuit Judge.

After a three months' jury trial in the Southern District of New York, appellants were convicted, on April 17, 1959, of conspiracy to violate federal narcotic laws, 21 U.S.C. §§ 173, 174. Their convictions were affirmed on appeal to this court, 274 F.2d 179, and the Supreme Court denied certiorari, Evola v. United States, 362 U.S. 974, 982, 80 S.Ct. 1057, 1058, 1059, 1068, 1071, 1073, 4 L.Ed.2d 1009, 1010, 1015, 1016, rehearing denied, Genovese v. United States, 363 U.S. 858, 80 S.Ct. 1610, 4 L.Ed.2d 1739.

On August 26, 1960, appellants moved in the district court for a new trial, Rule 33, Fed.R.Crim.P., and put forth, as grounds for their motions: (1) alleged recantations of trial testimony by the principal government witness, Nelson Cantellops; (2) statements by Cantellops at the hearing on the motions for a new trial which were allegedly inconsistent with his original testimony; (3) allegedly new extrinsic evidence tending to establish Cantellops' perjury in his trial testimony concerning a certain trip to Las Vegas, Nevada; (4) alleged concealment at the trial of a rent record in the possession of the Government; (5) alleged post trial statements by Cantellops which tended to discredit his trial testimony; (6) alleged spoliation of notes of federal Narcotics Agents Rowan, Consoli, and Muglia, in violation of the Jencks Act, 18 U.S.C. § 3500; and (7) failure of the Government to make available to the trial court certain interview notes of Assistant United States Attorney Donald H. Shaw, which notes were allegedly producible under the Jencks Act, 18 U.S.C. § 3500.

After extended hearings, Judge Bicks, who had presided at the original trial, denied appellants' motions insofar as they rested upon grounds 1 through 6 set forth above. 197 F.Supp. 536. He reserved decision with respect to the Shaw interview notes, indicating his intention to take further testimony regarding this issue. Due to the illness of Judge Bicks, however, the contemplated voir dire examination was not held. Judge Murphy was subsequently assigned to conduct the hearing and make a determination as to the ground upon which Judge Bicks had reserved decision. On December 22, 1961, Judge Murphy denied the motions for a new trial. 200 F.Supp. 711.

From these orders below adverse to them appellants now prosecute this consolidated appeal claiming that the grounds set forth above are individually and collectively sufficient to entitle them to a new trial under Rule 33, Fed.R. Crim.P. As to the grounds 1 through 6 set forth above, we affirm the order below on the careful opinion of Judge Bicks. As to the Shaw interview notes, we affirm the order of denial below for the reasons set forth hereafter.

During the course of the original trial, defense counsel inquired, following the direct examination of the Government's principal witness, Nelson Cantellops, whether the United States Attorney had in his possession

"any report or memorandum prepared by a government agent concerning any interview that was conducted with [Cantellops] at any

time, under the *Jencks* decision and under 3500."

The Government subsequently made available to the court what were represented to be "the complete files of the Bureau of Narcotics" on Nelson Cantellops. No interview notes of Assistant United States Attorney Shaw were included in these materials, and, despite the fact that prior testimony indicated extensive questioning of Cantellops by Shaw, defense counsel made no further request for, nor objection to the nonproduction of, any Shaw notes still in existence.

Specific requests and objections relative to the Shaw notes were not made by counsel for appellants until the hearings below on the motions for a new trial. During the course of these hearings Shaw himself testified concerning notes he had taken of some 20 to 30 interviews with Cantellops, and of a "chronological statement of facts," prepared from these notes and other sources, concerning Cantellops' involvement in the alleged conspiracy.

Upon demand by counsel for appellants, the Government produced for Judge Murphy's *in camera* inspection two envelopes labeled, respectively, "Former Assistant U. S. Attorney Shaw's Chronology" and "Original Notes and Assorted Miscellany of Former Assistant U. S. Attorney Shaw."

In ruling on appellants' motions, Judge Murphy separated the Shaw materials into three groups:

██ (1) Materials which were not "substantially verbatim recitals" of Cantellops' statements. Into this group were placed Shaw's "chronology of facts," together with certain of Shaw's "original notes and assorted miscellany." Ruling that these materials would not have been found producible under 18 U.S.C. § 3500 had they been made available for the court's inspection during the original trial, Judge Murphy concluded that their nonproduction was not prejudicial to appellants' interests. See Rosenberg v. United States, 360 U.S. 367, 370, 79 S.Ct.

1231, 3 L.Ed.2d 1304 (1959). We cannot say that Judge Murphy's findings with respect to these materials were erroneous.

(2) Materials which were "probably Jencks' statements." Judge Murphy ruled that the nonproduction of this second group of materials, into which was placed "the great majority" of Shaw's original interview notes, was nonprejudicial to appellants on the ground that "virtually the[ir] entire contents" "correspond[ed]" with the grand jury testimony of Cantellops which was turned over to the defense."

(3) Notes which "most assuredly should have been produced pursuant to § 3500." This group consisted of handwritten interview notes dated October 10 and 11, 1957. Although these notes contained new impeaching information not otherwise available to appellants, Judge Murphy ruled that nonproduction of these notes did not prejudice defendants' interests, in that defendants' cross-examination of Cantellops was not "unduly restricted" thereby:

> " * * * this witness was subjected to a most complete and searching cross-examination by able and experienced counsel during a period of 14 trial days, in the course of which his character and credibility were thoroughly explored and devastatingly attacked. The facts of his considerable prior criminal activities, his affliction with a loathsome disease, his immorality, his perjuries and his motive to misrepresent were all paraded before the jury without quarter. To be able with the use of the October notes to show that Cantellops spoke untruthfully on yet another occasion * * * would simply add umber to an already blackened witness." 200 F.Supp. at 717.

Appellants now vigorously contend that in so ruling with respect to the second two groups of Shaw materials, Judge Murphy misapplied the test of harmless error laid down in Rosenberg v. United States, supra, and United States v. Con-

solidated Laundries Corp., 291 F.2d 563 (2 Cir., 1961).

The Government argues, for its part, as it did below, first, that appellants waived all right to object to the non-production of the Shaw materials by their failure to demand these materials, or to object to their nonproduction, at trial; second, that the materials constituted an attorney's work product, and as such were not producible under 18 U.S.C. § 3500; third, that the materials were neither statements of a witness, nor substantially verbatim recitals of such statements, and, for this reason, were not producible under the Jencks Act, 18 U.S.C. § 3500.

Because of our disposition of the Government's contentions, we do not reach the issue of harmless error from which appellants direct their major attack upon the order of Judge Murphy below.

We consider, first, the Government's suggestion that appellants are precluded from objecting to the nonproduction of the Shaw materials by failure properly to demand the materials, or to object to their nonproduction, at trial.

After the direct examination of Nelson Cantellops at the original trial, defense counsel asked, as indicated above, whether the United States Attorney had in his possession

"any report or memorandum prepared by a government agent concerning any interview that was conducted with this witness at any time, under the Jencks decision and under 3500."

The court thereupon directed that "any such statement" be made available to counsel.

Counsel for the Government subsequently stated in open court:

"The United States Attorney's office has examined all the reports in this case and we find that there is no report which would fall within the ambit of Section 3500 and therefore need not be turned over to defense counsel."

When the court asked whether there was "any report whatever" that dealt with Nelson Cantellops, government counsel responded affirmatively, and Judge Bicks declared that he would examine those reports to determine whether they fell within Section 3500.

The Government now argues that defense counsel's request for "any report or memorandum prepared by a government agent" encompassed only reports of "Agents" of the Bureau of Narcotics, and not those of Assistant United States Attorneys, who, it is sought to have us believe, are not "government agents." Even if Shaw's materials were producible under the Jencks Act, the Government contends that, by their failure to make a timely demand, appellants are precluded from raising the issue upon this motion for a new trial.

Ours is an adversary system of criminal justice. It is not, however, a "game of verbal jackstraws," the object of which is to see whether the actions of either the Government or the defense can be pulled out from under the language of applicable statutes, the demands of opposing counsel, or the orders of the court, without disturbing any of the latter. Cf. Llewellyn, Jurisprudence 445 (1962). By enacting the Jencks Statute, 18 U.S.C. § 3500, Congress provided criminal defendants with a sharply circumscribed, but nonetheless important, right to obtain information from the prosecution in criminal proceedings. To utilize that right, defense counsel must proceed with unusual diligence. Counsel is entitled to no statements of a government witness until the witness has testified on direct examination, yet the statement is unlikely to be of value unless it is secured and studied by counsel prior to cross-examination. Counsel must often frame requests under the Act with little or no information concerning the circumstances under which, or the agents to whom, the witness may have given producible statements. Moreover, defense counsel ordinarily has no basis upon which to object to government nonproduction of requested statements where

unspecified materials are retained by the court following *in camera* inspection.

To these impediments to an effective invocation of Jencks Act rights by defendants in criminal cases the Government would now add the niceties of ancient common law pleading in the formulation of demands for producible statements. Of course the Act does not require that demands for statements must be of precise nicety, and we are unwilling to hold that such requests be couched in formal or technical language.

The Government further argues that the Shaw materials were the work product of an attorney and as such were not producible under 18 U.S.C. § 3500. In so arguing, the Government relies principally upon Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947) and the public policy reflected therein. Hickman v. Taylor, however, was concerned solely with discovery in civil proceedings. The obtaining of statements of witnesses in the hands of the prosecution which the defense may use for impeachment purposes in criminal trials is made possible by the Jencks Act. That act makes no distinction among statements on the basis of the purpose for which they were recorded or the type of government agent to whom they were made. Saunders v. United States, 316 F.2d 346 (D.C.Cir.1963).

We are brought, finally, to the Government's contention, vigorously argued below and renewed on this appeal, that the Shaw interview notes were not "substantially verbatim recitals" of statements by Nelson Cantellops, and thus were not producible under the Jencks Act. If the Government's contention be upheld on this point, it follows that appellants' motions for a new trial were properly denied, insofar as they rested upon nonproduction of the Shaw

materials. Appellants cannot have been prejudiced by the nonproduction of materials which, even had they been disclosed to the trial court for *in camera* inspection, would not have been found producible for defendants' use under the Act. •

In ruling that the October 10 and 11 notes were Jencks "statements," and that the great majority of Shaw's other original interview notes were probably "verbatim recitals" within the Act's definition, Judge Murphy relied solely upon the notes themselves and upon the record of Shaw's earlier testimony before Judge Bicks. Judge Murphy conducted no voir dire examination of Shaw and received no testimony from any other witness prior to ruling upon this portion of appellants' motions.[1] As we have available to us all of the materials upon which Judge Murphy based his rulings, our conclusion with respect to this factual issue is entitled to no less weight than that of the Court below.

In determining whether the Shaw notes were "statements" within the Jencks Act definition of that term, 18 U.S.C. § 3500(e), the cases provide certain well-defined criteria to assist us. Such a statement must, of course, be "a substantially verbatim recital of an oral statement made by [the] witness to an agent of the Government and recorded contemporaneously with the making of such oral statement." 18 U.S.C. § 3500 (e) (2). The statement must fairly be "the witness' own words." Palermo v. United States, 360 U.S. 343, 352, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959). It must "reflect fully and without distortion what had been said to the government agent." Ibid. The distortion which Congress sought to avoid by its narrowly-drawn definition "can be a product of selectivity as well as the conscious or inadvertent

1. Judge Murphy was not, of course, required to conduct a voir dire examination of Shaw, or to hold any hearing whatever, before determining whether these disputed documents were within the Jencks Act. As the Supreme Court said in Palermo v. United States, 360 U.S. 343, 354–355, 79 S.Ct. 1217, 1226, 3 L. Ed.2d 1287 (1959), it is "the function of the trial judge to decide, in light of the circumstances of each case, what, if any, evidence extrinsic to the statement itself may or must be offered to prove the nature of the statement."

infusion of the recorder's opinions or impressions." Thus, "a report which merely selects portions, albeit accurately, from a lengthy oral recital" will not be producible under the Act. Ibid.

■ In applying these criteria to the Shaw interview notes, we may consider, as did Judge Murphy, the general tenor of the notes themselves, Shaw's extensive testimony before Judge Bicks concerning the interviews and notes, and Shaw's affidavit, submitted to Judge Murphy in support of the Government's motion for reargument below and properly part of the record on this appeal.

Shaw testified at the post-trial hearing before Judge Bicks that he met with Cantellops 20 or 30 times over the course of almost a year. He testified that Cantellops spoke rapidly and in poor English, requiring that he "almost translate it and put it into a more recognizable form of English".[2] He stated that the notes were never read back to Cantellops, that Cantellops never signed or initialed them, and that only about one half of the notes contained information elicited from Cantellops, the remainder containing information coming from "close to a dozen different sources." Finally, Shaw testified that it was his practice to go over the notes after the interview and make

additions to them, as the notes were taken not for the purpose of providing a record of Cantellops' testimony, but to assist Shaw in drafting the chronological statement and to serve as a guide in interrogating Cantellops before the grand jury.

Shaw's affidavit, submitted to Judge Murphy in support of the Government's motion for reargument, substantiates the foregoing, and adds that Shaw was selective in his note-taking and did not record the testimony that he thought was "incoherent, illogical or in conflict with what the assistant then knew to be the fact from other witnesses."

Finally, the documents themselves indicate that they are the result of a process of selection. They are not as voluminous as they would be if they were complete transcriptions of Shaw's 20 to 30 interviews with Cantellops. Further, the signs of addition and interpolation are evident on the face of the documents.

■ We hold, consequently, that the Shaw materials contained no statements which, had they been delivered to the trial court for *in camera* inspection, would have been found to be producible under the Jencks Act.[3] The orders of Judge Bicks and Judge Murphy, denying appellants' motions for a new trial, are, affirmed.

2. This testimony is supported by the testimony of Narcotics Agent Rowan before Judge Bicks that it was "impossible" for him to keep up with Cantellops' statements in his note-taking, and that Cantellops spoke rapidly, in bad English, ungrammatically and indistinctly. Judge Bicks, himself, relying on his familiarity with Cantellops' testimony during the trial, indicates agreement with this characterization of Cantellops' speech habits. 197 F.Supp. at 557.

3. Our conclusion in this respect should not be read as a condonation of the Government's failure to deliver the Shaw

materials to the trial court for *in camera* inspection. See Judge Murphy's discussion, 200 F.Supp. at 714. In Palermo v. United States, 360 U.S. 343, 354, 79 S.Ct. 1217, 1225, 3 L.Ed.2d 1287 (1959), the Supreme Court laid down the rule that even before that time was the practice in this circuit: "When it is doubtful whether the production of a particular statement is compelled by the statute, we approve the practice of having the Government submit the statement to the trial judge for an *in camera* determination. Indeed, any other procedure would be destructive of the statutory purpose."