**UNITED STATES of America**

v.

**Frederick A. GROSS and William Michael Searcy.**

**Crim. No. 89–174.**

United States District Court,
E.D. Pennsylvania.

May 16, 1991.

Joseph T. Labrum, III, Asst. U.S. Atty., Philadelphia, Pa., for U.S.

Robert Kasanof, New York City, John S. Summers and Janet S. Kole, Philadelphia, Pa., David M. Zornow, New York City (co-counsel), for defendants.

MEMORANDUM

O'NEILL, District Judge.

On February 16, 1990, after a six week jury trial, defendant Frederick A. Gross

303

was found guilty of conspiracy and securities law violations and defendant William Michael Searcy guilty of insider trading and mail fraud as charged in a Superseding Indictment filed July 26, 1989.

Currently before me is defendants' joint motion to set aside the verdict or in the alternative for a new trial,[1] based on defendants' allegation that the government failed to provide Jencks Act material with respect to a key government witness, Henry Simmons. For the reasons that follow, I will deny defendants' motion.[2]

A. Jurisdiction

Jurisdiction to consider defendants' motion is based on the alternate grounds of Fed.R.Crim.P. Rule 33 and the Jencks Act, 18 U.S.C. § 3500. Rule 33 provides in part:

The Court on motion of a defendant may grant a new trial to that defendant if required in the interest of justice ... A motion for a new trial based on the ground of newly discovered evidence may be made only before or within two years after final judgment, but if an appeal is pending the court may grant the motion only on remand of the case.

Defendants' motion for a new trial is predicated on the defendants' allegedly post-trial discovery that a prosecutor had taken handwritten notes of interviews with a government witness, Henry Simmons, and had not disclosed these notes to the defense during trial. Defendants contend that the prosecutor's rough notes contain Jencks Act material which should have been disclosed pursuant to my ruling during the trial concerning any Jencks Act material in the government's possession. Defendants assert that they believed that Simmons had been interviewed by the government six times but after trial learned from Simmons' presentence report

that he had been interviewed on at least six additional occasions. The government did not disclose any notes from these interviews.

The government claims that the evidence in question here, the prosecutor's rough notes of several interviews with Simmons, should not be considered "newly discovered" evidence and I am therefore without jurisdiction to entertain defendants' motion or, in the alternative, that defendants have waived their claim. Government's Supplemental Memorandum of law in Opposition to Defendants' Motion to Set Aside the Verdict, or in the Alternative, for a New Trial ("Government's Supplemental Memorandum") at 4 n. 2. The government contends that defendants have falsely claimed surprise at the discovery of the prosecutor's notes of interviews with witness Simmons because, the government claims, defendants were informed before Simmons' trial testimony about the existence of these notes. Government's Response to Defendants' Joint Motion to Set Aside the Verdict, or in the Alternative, for a New Trial ("Government's Response") at 5, n. 2. The government has submitted the affidavit of Postal Inspector Michael Bolger, a member of the prosecution team, in which he states that he witnessed the prosecuting attorneys advising defense counsel prior to Simmons' testimony that "the only documents which evidenced [a number of pretrial interviews with Simmons] were the prosecutor's handwritten rough notes." Government's Supplemental Memorandum, Exh. A.

Even if the defense knew of the existence of the notes, Bolger's affidavit does not defeat defendants' claim that the notes constitute newly discovered evidence. The government represented to the defense and to the Court that it had complied with my

1. In my Order dated March 8, 1991, I stated that as the notes in question had not been destroyed, I understood defendants' motion to request a new trial only. In the submissions currently before me, defendants assert that they also request that the verdict be set aside and the indictment dismissed.

2. In reaching my decision, I have considered defendants' joint motion, the government's response thereto, the supporting memoranda of law, defendants' joint supplemental memorandum and the government's response thereto, two letters from counsel for Mr. Gross on behalf of Mr. Gross and Mr. Searcy, and two letter briefs from the government. I have also examined the notes at issue.

Jencks Act ruling.[3] If the government disclosed the existence of the notes to the defense, this representation necessarily was a representation that the notes did not contain Jencks Act material. If the notes do contain such material, they are newly discovered evidence.

The government also argues that defendants' joint motion for a new trial is untimely. *See* Government's Response at 9, citing *United States v. Coleman*, 811 F.2d 804, 807 (3d Cir.1987), *appeal after remand*, 862 F.2d 455 (3d Cir.1988), *cert. denied*, 490 U.S. 1070, 109 S.Ct. 2074, 104 L.Ed.2d 638 (1989). As defendants' motion under Rule 33 is based on newly discovered evidence, it is timely.

The government argues further that if I consider defendants' motion as a timely motion for a new trial based on newly discovered evidence that I should deny the motion because defendants cannot meet the standard under which such motions should be evaluated. *See* Government's Response at 10–11, citing *United States v. Iannelli*, 528 F.2d 1290, 1292 (3d Cir.1976). This argument goes to the merits of defendants' motion rather than to my jurisdiction to consider the motion.[4]

Jurisdiction to consider defendants' joint motion also is based on the Jencks Act itself. The Act provides specific sanctions for the government's failure to comply with a court order to produce Jencks material:

(d) If the United States elects not to comply with an order of the court under subsection (b) or (c) hereof to deliver to the defendant any such statement, or such portion thereof as the court may direct, the court shall strike from the record the testimony of the witness, and the trial shall proceed unless the court in its discretion shall determine that the interests of justice require that a mistrial be declared.

18 U.S.C. § 3500(d).

Although the language of the Act contemplates that the court will impose sanctions during the trial, courts have interpreted the Act to permit consideration of post-trial motions for new trials. In *United States v. Butts*, 535 F.Supp. 608 (E.D.Pa. 1982), for example, the district court granted a defendant's motion for a new trial brought "[p]ursuant to the statute ... 18 U.S.C. § 3500(d)." *Id.* at 613. In *United States v. Petrillo*, 821 F.2d 85 (2d Cir.1987), the defendant moved for a new trial because documents surfaced after trial which the defendant alleged should have been produced under either the Jencks Act or *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). *Id.* The Court explained that different legal standards govern a motion for a new trial pursuant to 18 U.S.C. § 3500 as opposed to one based on newly-discovered evidence pursuant to Rule 33. *Id.* at 88 and n. 2, 83 S.Ct. at 1197 and n. 2. Other courts have also referred to Rule 33 and the Jencks Act as separate bases for jurisdiction to hear post-trial motions. *See e.g., United States v. Miranda*, 526 F.2d 1319, 1324 n. 4 (2d Cir.1975), *cert. denied*, 429 U.S. 821, 97 S.Ct. 69, 50 L.Ed.2d 82 (1976) (18 U.S.C. § 3500(d) and Rule 33 cited as separate bases for imposing sanction of new trial for government failure to comply with Jencks Act); *United States v. Aviles*, 197 F.Supp. 536, 552 (S.D.N.Y.1961), *aff'd*, 315 F.2d 186 (2d Cir.1963), *vacated on other grounds sub nom. Barcelona v. United States*, 375 U.S. 32, 84 S.Ct. 24, 11 L.Ed.2d 106 (1963) (defendants moved for new trial pursuant to Rule 33 and Jencks Act).

**B. Waiver of Right to Seek Production of Alleged Jencks Material**

The government argues that defendants waived their right to seek production of

---

**3.** Nor do I consider Bolger's affidavit to support the view that defendants have waived their Jencks Act claim. The government was under a continuing obligation to produce Jencks Act material *in compliance with my trial ruling. See infra* Section B.

**4.** Finally, the government contends that I do not have jurisdiction to consider defendants' motion because it is out of time under Rule 34, which governs motions in arrest of judgment. *See* Government's Response at 13. As defendants' motion is not made pursuant to Rule 34, I need not consider this argument.

any Jencks Act material alleged to be in the notes taken by the prosecutor when interviewing government witness Simmons because defendants did not make a formal motion at the conclusion of the direct examination of Simmons. *See* Government's Response at 15; 18 U.S.C. § 3500(b).[5] Defendants admit they made no such motion but dispute the government's contention that their failure to move for production of Jencks statements at the conclusion of Simmons' testimony constituted a waiver. *See* Supplemental Memorandum in Support of Frederick A. Gross' Motion to Set Aside the Verdict, or in the Alternative, for a New Trial (Defendants' Supplemental Memorandum) at 5 n. *. I agree with defendants.

Before Simmons' direct testimony and in response to a defense request, I made the following ruling with regard to the Jencks issue:

> I will follow but not expand on Judge Newcomer's ruling in *United States v. Golden*, which is simply that any notes or memoranda prepared by another hearing prosecutor are to be produced but only to the extent that such documents reflect statements adopted or otherwise approved by the witness. That is the standard. I would just suggest to you in light of my ruling you look at the notes again to make sure ... since you weren't

previously aware of that ruling, that you have in fact conformed to it.

Transcript 1/19/90 at 57–58.[6]

My ruling covered all notes or memoranda prepared by prosecutors and placed on the government a continuing obligation to produce any Jencks Act material in its possession. The government represents that it complied with my ruling, Government's Memorandum at 5, but that to do so did not require the government to produce additional information since it maintains that it had agreed to disclose and had disclosed "all Jencks material ... well before the start of the trial." Government's Memorandum at 3; Government's Supplemental Memorandum at 3. The government admits also that it faced "repeated defense requests for prosecutors' handwritten notes of meetings with Simmons." *Id.*

The defendants therefore are correct that to require them to move formally for Jencks Act material at the close of Simmons' testimony would be to elevate form over substance: the government had agreed to produce Jencks material and was obliged to produce statements in compliance with my ruling. *See* Defendants' Supplemental Memorandum at 5, n. *; *United States v. Newman*, 849 F.2d 156, 159 (5th Cir.1988) ("Where the government agrees to produce Jencks material before trial, the defendant does not have to move for the material at the close of each witness's testi-

5. *See also* n. 3.

6. Although my ruling appears to require the production of prosecutor's notes only if they fall within the first Jencks Act definition of "statement," *see* § 3500(e)(1), it is clear from Judge Newcomer's *Golden* decision that his ruling, and therefore mine also, included "virtual quotations of the witness."

In addition, counsel for defendant Gross stressed this point in arguing that I should follow *Golden:* "That case, in discussing what is Jencks statements and what are not, states that with respect to prosecutor's notes, statements which are either approved or adopted by a witness are—constitute Jencks and that adoption or approval includes if the prosecutor writes down virtual quotations of the witness. And what we're interested in is the prosecutor's notes that contain virtual quotations from the witness.... we're not interested in work product that can be redacted out. We're only interested in quotations." Tr. of 1/19/90 at 7–8.

It is also clear that the government understood the defense to be arguing statements in the notes as defined under either prong of the Jencks Act should be produced under *Golden:* "Our position is that they [the prosecutor's notes] are not Jencks Act materials. They were never reviewed with the witness or adopted by the witness. *The witness is not quoted.*" Tr. 1/19/90 at 8. (emphasis added). Indeed, to hold that in no event would the notes be producible under § 3500(e)(2) would be inconsistent with the Jencks Act. *See Goldberg v. United States,* 425 U.S. 94, 122 n. 9, 96 S.Ct. 1338, 1353 n. 9, 47 L.Ed.2d 603 (1976) (Powell, J., concurring) (prosecutor's notes may meet the requirements of § 3500(e)(2) but will rarely do so). In any event, neither the government nor defendants argue that my ruling did not require disclosure of statements under both 18 U.S.C. § 3500(e)(1) and (e)(2).

mony.") (citing *United States v. McKenzie,* 768 F.2d 602, 609 (5th Cir.1985), *cert. denied,* 474 U.S. 1086, 106 S.Ct. 861, 88 L.Ed.2d 900 (1986)).

## C. Jencks Act Material

### 1. Government Concession

Defendants argue that the government has made a series of binding concessions that the notes of Simmons interviews taken by the prosecutor and withheld from the defense contain Jencks Act material. Defendants' Supplemental Memorandum at 6–9. Defendants point to the following statements by the government:

—In a letter to the defense dated December 31, 1990, the government stated that "at the time of trial in this matter, you received access to all notes of government attorneys pertaining to interviews with Mr. Simmons which contained any material which was *either new or different* from that set forth in the memoranda prepared by the Postal Inspector Thompson." *See* Memorandum in Support of Frederick A. Gross' Motion to Set Aside the Verdict, or, in the Alternative, for a New Trial (Defendants' Joint Motion), Exhibit 11 (emphasis added in Defendants' Joint Motion); Defendants' Supplemental Memorandum at 6.

—Again in the same letter, the government stated "You will recall that the government made an extensive examination of all notes in its possession during the course of the trial to determine whether there was any material which was *either new or different* from that provided in the Postal Inspector's two memorandums of interview. The government disclosed to you those notes which contained any such material." Defendants' Joint Motion, Exhibit 11 (emphasis added in Defendants' Joint Motion); Defendants' Supplemental Memorandum at 6–7.[7]

—In a telephone conversation with defense counsel the day before Gross and Searcy were to be sentenced, January 2, 1991, the government again described the material it understood itself to be obligated to produce under my Jencks Act ruling as that which was "new or different" from the memoranda of the postal inspector. Defendants' Joint Motion, Exhibit 12; Defendants' Supplemental Memorandum at 7.

—In Response to Defendants' Motion, the government claims that "the notes contain nothing that could be construed as other than cumulative of the Jencks material pertaining to Simmons which was disclosed to the defendants." Government's Response at 12.

—The government repeats this description of the notes withheld in its Supplemental Memorandum: "To the extent that the notes contain references to [events and information about the defendants and their criminal conduct as described in the actual Jencks Act statements of Simmons], they are cumulative of the Jencks Act statements provided to the defendants." Government's Supplemental Memorandum at 3.

The government vehemently denies that it ever conceded that the prosecutor's notes withheld from the defense contained Jencks Act material. *See* Letter to the Court dated March 11, 1991; Government's Supplemental Memorandum at 1–3. The government also argues, to my mind correctly, that even if it did so concede it cannot be bound by such a concession because a concession cannot transform non-Jencks notes into Jencks Act statements. Government's Supplemental Memorandum at 2.

### 2. Whether the inquiry should be in camera

The government has provided the notes for an *in camera* inspection. Defendants argue that my inquiry into whether the notes contain statements should not be *in camera.* The language of the Jencks Act anticipates that the issue of whether a given document constitutes Jencks Act materi-

---

**7.** The government did not produce any prosecutor's notes of interviews with Simmons to the defense.

al will arise during trial and directs that an *in camera* inquiry be held when the government objects at that time to the production of statements because those statements do not relate to the subject matter of the witness' testimony. 18 U.S.C. § 3500(c). That is not the situation here. In this case, the government objects after trial to the production of notes it contends are not "statements" within the meaning of the Jencks Act although they may relate to the subject matter of the testimony.

Although the Act does not specifically address this situation, courts have held that a district court may not rely solely on the government's assertion that the prosecutor's notes are not statements. At least, I must examine the document defendants contend contains Jencks Act statements. *United States v. Walden,* 578 F.2d 966, 970 (3d Cir.1978) (given evidence that notes might be statements, trial court should not have relied on prosecutor's description of the handwritten materials but should have examined them); *United States v. Allen,* 798 F.2d 985, 996 (7th Cir.1986) (district court should not rely on government assertion that document does not fit statutory definition of statement; presumption that an *in camera* hearing is needed to inspect the document); *United States v. Miller,* 771 F.2d 1219, 1232 (9th Cir.1985) (inappropriate for a court to allow the government unilaterally to determine whether a writing is a statement).

It is within my discretion to decide whether I need any evidence extrinsic to the documents themselves to determine whether they are or contain statements within the meaning of the Jencks Act. *Goldberg v. United States,* 425 U.S. 94, 108, 96 S.Ct. 1338, 1347, 47 L.Ed.2d 603 (1976) ("a Government objection to production may require that the trial court inspect documents or hold a hearing to gather extrinsic evidence bearing on the extent to which the documents are statements producible under § 3500"). Courts have held that little, if any, extrinsic evidence ordinarily will be needed to determine if the statement is a Jencks Act statement. *United States v. Foley,* 871 F.2d 235, 239 (1st Cir.1989) ("if an inspection of the doc-

uments suffices, there is no need to take extrinsic evidence"); *United States v. North American Reporting, Inc.,* 761 F.2d 735, 738–39 (D.C.Cir.) (*"North American II"*) (same), *cert. denied,* 474 U.S. 905, 106 S.Ct. 273, 88 L.Ed.2d 234 (1985); *United States v. Fowler,* 608 F.2d 2, 6 (D.C.Cir. 1979) (same). As the Supreme Court stated: "It is also the function of the trial judge to decide, in light of the circumstances of each case, what, if any, evidence extrinsic to the statement itself may or must be offered to prove the nature of the statement. In most cases, the answer will be plain from the statement itself." *Palermo v. United States,* 360 U.S. 343, 354–55, 79 S.Ct. 1217, 1226, 3 L.Ed.2d 1287 (1959).

I believe I can determine whether the documents are statements within the Jencks Act from the notes themselves and the affidavits of the interviewing attorney and the witness. *See Campbell v. United States,* 373 U.S. 487, 494, 83 S.Ct. 1356, 1361, 10 L.Ed.2d 501 (1963). I will not grant defendants' request that they be given access to the notes. Defendant's Joint Supplemental Memorandum at 9–10. The Supreme Court has explained that to allow the defense access to documents which potentially fall within the Jencks Act for the purpose of arguing that they are covered by the Act would defeat the goals of the Jencks Act:

> The Act's major concern is with limiting and regulating defense access to government papers, and it is designed to deny such access to those statements which do not satisfy the requirements of (e), or do not relate to the subject matter of the witness' testimony. It would indeed defeat this design to hold that the defense may see statements in order to argue whether it should be allowed to see them.

*Palermo,* 360 U.S. at 354, 79 S.Ct. at 1226; *see also North American* II, 761 F.2d at 740.

### 3. Whether the notes are "statements" within the meaning of the Jencks Act

■ The Jencks Act provides three definitions of a "statement":

(1) a written statement made by said [government] witness and signed or otherwise adopted or approved by him;

(2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or

(3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury.

18 U.S.C. § 3500(e).

The third definition is not relevant here. The prosecutor's notes at issue in this case, if they are Jencks material at all, could fall within only the first or second definitions.[8] *See United States v. North American Reporting Inc.*, 740 F.2d 50, 56 (D.C.Cir.1984) (*"North American I"*) (remanding for determination of whether prosecutor's notes qualify as statements under either section). Under either (e)(1) or (e)(2), the emphasis is on whether the statement reflects fully and without distortion the witness's own words. *Goldberg*, 425 U.S. at 112, 96 S.Ct. at 1349 (Stevens, J., concurring); *Palermo*, 360 U.S. at 352–53, 79 S.Ct. at 1224–25.

a. Approval and adoption under § 3500(e)(1)

The Supreme Court has explained that a government witness may approve or adopt a statement without signing the statement but that to do so a witness must understand and react to the notes taken by the government lawyer:

> Every witness interview will, of course, involve conversation between the lawyer and the witness, and the lawyer will necessarily inquire of the witness to be certain that he has correctly understood what the witness has said. Such discussions of the general substance of what

the witness had said do not constitute adoption or approval of the lawyer's notes within § 3500(e)(1) ... This requirement clearly is not met when the lawyer does not read back, or the witness does not read, what the lawyer has written.

*Goldberg*, 425 U.S. at 110–11 n. 19, 96 S.Ct. at 1348 n. 19 (1976); *see also Campbell*, 373 U.S. at 492, 83 S.Ct. at 1359 (report copy of notes in report form was producible under § 3500(e)(1) where government agent read back notes to government witness, who adopted them); *United States v. O'Malley*, 796 F.2d 891, 900 (7th Cir.1986) (prosecutor's notes were not statements within § 3500(e)(1) where witness had not seen the notes nor had they been read to him); *United States v. Strahl*, 590 F.2d 10, 15 (1st Cir.1978) (although the prosecutor "went over it with [the witness]," prosecutor's notes were not statements when witness did not sign, approve or adopt them), *cert. denied*, 440 U.S. 918, 99 S.Ct. 1237, 59 L.Ed.2d 468 (1979).

In making the determination of whether a witness has approved or adopted a statement, the Supreme Court has directed district courts to consider the testimony of both the government agent and the government witness. *Campbell*, 373 U.S. at 494, 83 S.Ct. at 1361; *see also Strahl*, 590 F.2d at 14–15.

In this case, the government has submitted the sworn affidavits of the prosecutor, Assistant U.S. Attorney Joseph T. Labrum, III, and of the government witness, Henry G. Simmons. Government's Response, Exhibits A and B. Both Labrum and Simmons state that Simmons did not read any handwritten notes made by any of the prosecutors nor were any notes read to him. *Id.* Both Labrum and Simmons state that Simmons was not asked to adopt or approve any material contained in the pros-

---

**8.** In making my determination of whether the government attorney's notes constitute or contain statements I am mindful that the Court of Appeals for the Third Circuit has specifically held that the rough interview notes of government agents "should be kept and produced so that the trial court can determine whether the notes should be made available to the [defen-

dant] under ... the Jencks Act." *United States v. Vella*, 562 F.2d 275, 276 (3d Cir.1977), *cert. denied*, 434 U.S. 1074, 98 S.Ct. 1262, 55 L.Ed.2d 779 (1978); *United States v. Ammar*, 714 F.2d 238, 258–59 (3d Cir.), *cert. denied sub nom. Stillman v. United States*, 464 U.S. 936, 104 S.Ct. 344, 78 L.Ed.2d 311 (1983).

ecutors' handwritten notes. *Id.* I need no additional information to conclude that attorney Labrum's notes do not fall within § 3500(e)(1). *Goldberg,* 425 U.S. at 110–11 n. 19, 96 S.Ct. at 1348 n. 19.

**b. Substantially verbatim under § 3500(e)(2)**

■ The Supreme Court has construed the second definition of "statement" under the Jencks Act to include "only those statements which could properly be called the witness' own rather than the product of the investigator's selections, interpretations and interpolations," *Palermo,* 360 U.S. at 350, 79 S.Ct. at 1223, and those which "could fairly be deemed to reflect fully and without distortion what had been said to the government agent." *Id.* at 352, 79 S.Ct. at 1224. The Supreme Court declined to give trial courts more precise indicia of when notes are statements, preferring instead to trust trial courts "to be guided by the indicated standard, informed by fidelity to the congressional purposes we have outlined." *Id.*

In his concurrence in *Goldberg,* Justice Powell recognized that "the fact that counsel usually will take notes does not mean that the notes often will be 'statements.' Counsel rarely take down verbatim what witnesses say in these preparatory conferences. Consequently, prosecutors' notes may be expected to meet the requirements of [18 U.S.C. § 3500(e)(2) ] very infrequently. The notes taken will vary from cryptic 'memory jogs' to full summaries of anticipated testimony." *Goldberg,* 425 U.S. at 122 n. 9, 96 S.Ct. at 1353 n. 9 (Powell, J., concurring) (quoted in *United States v. Martino,* 648 F.2d 367, 387 (5th Cir.)), *re-*

considered in part, 650 F.2d 651 (5th Cir. 1981) (vacating judgment against one defendant on other grounds), *cert. denied,* 456 U.S. 943, 102 S.Ct. 2006, 72 L.Ed.2d 465 (1982) and in *United States v. Ben M. Hogan Co., Inc.,* 769 F.2d 1293, 1300 (8th Cir.1985), *vacated on other grounds,* 478 U.S. 1016, 106 S.Ct. 3325, 92 L.Ed.2d 732 (1986). In this case, the issue is whether attorney Labrum's notes exemplify the rare circumstance in which a prosecutor has written down substantially verbatim what the witness has said in an interview.[9]

In subsequent decisions, courts have further clarified the meaning of "substantially verbatim." Courts did not require prosecutors to produce their notes of interviews with government witnesses in *North American II,* 761 F.2d at 740 (prosecutor's notes "contain incomplete, episodic statements as to what information the witnesses possessed and what questions the witnesses ought to be asked"); *Hogan,* 769 F.2d at 1300–01, *vacated on other grounds,* 478 U.S. 1016, 106 S.Ct. 3325, 92 L.Ed.2d 732 (1986) (dicta that prosecutor's notes viewed in their entirety do not constitute Jencks material although they contained "several sentences and phrases enclosed in quotation marks"); *United States v. Miller,* 771 F.2d 1219, 1232 (9th Cir.1985) (fragmentary quotations contained in counsel's witness interview notes do not constitute substantially verbatim statements covered by Jencks Act); *Martino,* 648 F.2d at 387 n. 9, *cert. denied,* 456 U.S. 943, 102 S.Ct. 2006, 72 L.Ed.2d 465 (1982) (interviewers usually take notes rather than verbatim statements; "notes taken by an interviewer during an interview with the witness do not

---

9. While not determinative of whether notes are statements, it is useful to understand how the Supreme Court anticipated the statements of witnesses would be used. The Supreme Court explained the importance of the context of the witness' words in *Jencks v. United States,* 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957), the case from which the Jencks Act takes its name. In *Jencks,* the Supreme Court set forth its reason for permitting the defense access to documents in the government's possession at the time of trial:

Every experienced trial judge and trial lawyer knows the value for impeaching purposes of

statements of the witness recording the events before time dulls treacherous memory. Flat contradiction between the witness' testimony and the version of the events given in his reports is not the only test of inconsistency. The omission from the reports of facts related at trial, or a contrast in emphasis upon the same facts, even a different order of treatment, are also relevant to the cross-examining process of testing the credibility of a witness' trial testimony.

353 U.S. at 667, 77 S.Ct. at 1013 (quoted in *United States v. Rosa,* 891 F.2d 1074, 1076–77 (3d Cir.1989)).

qualify as a statement under the Jencks Act"); *United States v. Consolidated Packaging Corp.*, 575 F.2d 117, 129 (7th Cir.1978) ("The original notes, as far as they are intelligible, are mere longhand words and phrases and fall far short of coming within the Jencks Act requirements."); *United States v. Lamma*, 349 F.2d 338, 340–41 (2d Cir.), *cert. denied*, 382 U.S. 947, 86 S.Ct. 407, 15 L.Ed.2d 355 (1965) (although notes were made contemporaneously, prosecutor's notes were not statements but "fragmentary and do not appear to set out the substance of the interviewee's remarks; nor is there any indication that they conform to his language rather than that of the Assistant U.S. Attorney ... These jottings contain several interpolations of the interviewer, and hardly record a continuous narrative"); *United States v. Aviles*, 337 F.2d 552, 558–59 (2d Cir.1964), *cert. denied sub nom. Gigante v. United States*, 380 U.S. 906, 85 S.Ct. 885, 13 L.Ed.2d 794 (1965) (trial court erred in finding prosecutor's notes were statements under (e)(2) where prosecutor selectively noted what the witness said; volume of notes were insufficient to be complete transcript of interviews; documents evidenced interpolations); *see also United States v. Fowler*, 608 F.2d 2, 6 (D.C.Cir.1979) (prosecutor's notes not statements but "short, very cryptic, and only set forth a few references to scattered facts; they are incomplete and could do nothing more than jog the prosecutor's memory to a few items"); *United States v. Spencer*, 618 F.2d 605, 606 (9th Cir.1980) (under § 3500(e)(1), notes are not statements when they "are not complete, are truncated in nature, or have become an unsiftable mix of witness testimony, investigator's selections, interpretations, and interpolations").

Notes or summaries of notes taken by agents of the government other than prosecutors have not been ordered to be produced in similar circumstances. *See e.g., United States v. Cuesta*, 597 F.2d 903, 914 (5th Cir.1979), *cert. denied sub nom. Patterson v. United States*, 444 U.S. 964, 100 S.Ct. 451, 62 L.Ed.2d 377 (1979) (investigator's notes of interviews did not fall under the Jencks Act even if they may have contained " 'occasional verbatim recitations of phrases used by the person interviewed' ") (quoting *United States v. Hodges*, 556 F.2d 366, 368 (5th Cir.), *cert. denied*, 434 U.S. 1016, 98 S.Ct. 735, 54 L.Ed.2d 762 (1977)); *United States v. Starusko*, 729 F.2d 256, 263 (3d Cir.1984) (agent's interpretation of remarks made by government witness is not a statement); *United States v. Foley*, 871 F.2d 235, 239 (1st Cir.1989).

By contrast, the government has been compelled to produce contemporaneous notes which were closer to verbatim renderings of a witness's own words. In *Williams v. United States*, 338 F.2d 286, 288 (D.C.Cir.1964), the statements at issue fell within the Jencks Act because both the notes themselves and the circumstances under which they were recorded bore the hallmarks of verbatim transcription. Testimony established that a clerk typed the witnesses' statements as they spoke. *Id.* The notes set forth a running account of what the witnesses said and contained idiomatic language, quotation marks and the witnesses' grammatical errors. *Id.* The Court set forth several factors it used as guidelines to judge whether a document fell within the Jencks Act:

> (1) the extent to which it conforms to the language of the witness; (2) its length in comparison with the length of the interview; (3) the lapse of time between the interview and its transcription; (4) the appearance of the substance of the witness' remarks; (5) the use of quotation marks; (6) the presence of the comments or ideas of the interviewer.

*Williams*, 338 F.2d at 288. *See North American I*, 740 F.2d at 56 ("So long as the [prosecutor's] notes can be fairly characterized as the witness' own words, they should be made available to the defense"); *Saunders v. United States*, 316 F.2d 346, 349–50 (D.C.Cir.1963) ("If the [prosecutor's] notes contain both verbatim remarks of the witness and personal observations of the attorney, then paragraph (c) of the act requires that the district judge inspect the statement and excise the protected material if this is possible."); *United States v. Lonardo*, 350 F.2d 523, 525–26 (6th Cir.1965) (destroyed documents were substantially verbatim transcript of witnesses' state-

ments where "stenographer took down what they said word for word" as they said it; remanded for new trial).

In this case, the prosecutor hand wrote 47 legal-sized pages of notes over the course of approximately eight interviews with witness Simmons.[10] The prosecutor took fewer than six sparsely filled pages of notes for each of most of these interviews, which lasted from two to six hours each. *See* Defendants' Joint Motion at 6 n. *. This information alone is sufficient to show that the prosecutor was highly selective in the information he wrote down. *See Williams*, 338 F.2d at 288; *Aviles*, 337 F.2d at 558 (volume of notes compared to length of interview was evidence that prosecutor did not completely transcribe interview).

The text of the notes themselves demonstrates that they do not "reflect fully and without distortion what had been said to the government agent." *Palermo*, 360 U.S. at 352, 79 S.Ct. at 1224. The bulk of the prosecutor's notes are aptly described by the government as fragmentary and abbreviated. Most notations are individual words or single phrases. Notes on the same page are sometimes written with as many as three different pens; some notes are written in the margins; others are perpendicular to the rest of the page. In two instances, quotation marks are penned or pencilled out. Many of the notations are unintelligible. As the notations are almost without exception fragmentary phrases, the notes evidence Labrum's selections from and impressions of Simmons' ongoing recital.

The notes do contain isolated nearly complete sentences and phrases which I believe in themselves may accurately record the substance of what Simmons said. Scattered throughout the notes are single words or groups of words enclosed in quo-

tation marks. Some idiomatic phrases appear, including "going to hell in a handbasket" and "out of control." Rarely does more than one word or one phrase enclosed in quotes appear on a single page. Several longer phrases or almost complete sentences begin with the words "Gross said" or "Searcy said." The question becomes whether the Jencks Act requires me to sift through notes which I have concluded do not in their entirety reflect what the witness said to pick out isolated notations as "statements" within the meaning of § 3500(e)(2).

I believe it would be inconsistent with the goals of the Jencks Act to order disclosed from 47 pages of notes individual lines in which attorney Labrum accurately recorded isolated sentences or phrases spoken by Simmons. The Supreme Court has emphasized the need for fairness to the witness: it would "be grossly unfair to allow the defense to use statements to impeach a witness which could not fairly be said to be the witness' own rather than the product of the investigator's selections, interpretations and interpolations." *Palermo*, 360 U.S. at 350, 79 S.Ct. at 1223. In *Palermo*, the Supreme Court specifically identified selective quotation, even where the quoted phrase is itself accurate, as a danger against which Congress intended the government witness to be protected by the Jencks Act:

> It is clear that Congress was concerned that only those statements which could properly be called the witness' own words should be made available to the defense for purposes of impeachment. It was important that the statement could fairly be deemed to reflect fully and without distortion what had been said to the government agent. Distortion can be a product of selectivity as well as the conscious or inadvertent infu-

10. The interview dates are: 4/24/89 (11 pages); 6/14/89 (6 pages); 7/11/89 (4 pages); 9/21/89 (4 pages); 10/12/89 (6 pages); 11/3/89 (4 pages); 11/22/89 (6 pages) and 12/12 [no year] (5 pages). In addition, there are three individual pages without headings or dates, containing 2, 6 and 15 lines respectively.

The government also has provided the Court with notes whose caption reveals that they were taken during a meeting with a defense attorney,

not with the government witness, and therefore cannot contain a statement of the government witness. In addition, the attorney's notes listing the exhibits to be presented at trial constitute attorney work product rather than statements of the witness. I do not find that any of these pages contain Jencks Act material; nevertheless, my discussion of "statements," *infra*, applies to some of these notes as well.

sion of the recorder's opinions or impressions. It is clear from the continuous congressional emphasis on 'substantially verbatim recital,' and 'continuous, narrative statements made by the witness recorded verbatim, or nearly so ...' that the legislation was designed to eliminate the danger of distortion and misrepresentation inherent in a report which merely selects portions, albeit accurately, from a lengthy oral recital. Quoting out of context is one of the most frequent and powerful modes of misquotation.

*Palermo,* 360 U.S. at 352, 79 S.Ct. at 1224–25 (citations omitted). In *Hogan,* the Court of Appeals for the District of Columbia specifically disapproved of the district court's determination that isolated lines among an attorney's notes constituted statements within the meaning of the Jencks Act:

> Certainly the District Court was not required to order disclosed as Jencks Act material a few scattered sentences and phrases it found in a body of otherwise non-Jencks Act, attorneys' rough interview notes. In fact, we believe that a trial court ought not employ such a process of extrapolation unless the particular circumstances of a case are extremely compelling ... We decline, however, to determine whether or not the District Court erred in ordering portions of the [attorney's] notes disclosed.

*United States v. Ben M. Hogan Co., Inc.,* 769 F.2d 1293, 1300–01 (8th Cir.1985), *vacated on other grounds,* 478 U.S. 1016, 106 S.Ct. 3325, 92 L.Ed.2d 732 (1986)[11]; *see also* cases cited *supra* at 309–10.

While it is permissible to disclose portions of a given document,[12] the goal of the Jencks Act under either subsection of § 3500(e) is to permit disclosure to the defense only of statements which can "fairly be said to be the witness' own." *Goldberg,* 425 U.S. at 105, 96 S.Ct. at 1345 (quoting *Palermo,* 360 U.S. at 350, 79 S.Ct. at 1223); *see United States v. Aviles,* 337 F.2d 552, 559 (2d Cir.1964), *cert. denied sub nom. Gigante v. United States,* 380 U.S. 906, 85 S.Ct. 885, 13 L.Ed.2d 794 (1965) ("Although courts should show the greatest liberality in making available to the defense any writing which represents what the witness may have said, they must also be meticulous in satisfying themselves that what is made available truly represents the witness' own statements."). Were I construing (e)(1) rather than (e)(2), there would be less danger of violating this policy by lifting an isolated sentence or phrase completely out of context. The Supreme Court's requirement that the witness have adopted specifically the particular lines in question renders the danger of distortion less likely: "although there is some risk that a witness' words will be distorted in notes taken by a Government lawyer ... there is no such danger where a witness has adopted or approved the lawyer's notes." *Goldberg,* 425 U.S. at 107, 96 S.Ct. at 1346;[13] *see also id.* at 115–16, 96 S.Ct. at 1350–51 (Stevens, J., concurring) ("any determination that a portion of the prosecutor's notes is producible must be supported by a finding of unambiguous and specific approval of the witness.") In construing the "substantially verbatim" prong of the Jencks Act, I do not have the safeguard of

---

11. The Court's holding in *Hogan* that the notes properly were not disclosed in their entirety was based on the ground that the defense had waived its Jencks Act claim. *Hogan,* 769 F.2d at 1301.

12. The Jencks Act requires in § 3500(c) that the district court excise portions of a witness' statement that do not relate to the subject matter of the witness testimony at trial. I am not concerned at this point with whether the notes relate to Simmons' testimony but with whether the individual notations can fairly be considered to be statements of the witness.

13. Some courts have read *Goldberg* to permit disclosure of a government attorney's notes of a witness interview only where the witness has

approved and adopted the notes as required under (e)(1). *See e.g., United States v. Traylor,* 656 F.2d 1326 (9th Cir.1981). However, the parties in *Goldberg* did not raise and the Supreme Court did not consider the possibility that the notes fell within (e)(2) and the Court's holding is therefore limited to (e)(1). *See Goldberg,* 425 U.S. at 120, n. 2, 96 S.Ct. at 1352, n. 2; *id.* at 126, 96 S.Ct. at 1355 (Powell, J., concurring). In his concurrence in *Goldberg,* Justice Powell explained that, although it will rarely happen, a government attorney's notes may constitute a statement within (e)(2). 425 U.S. at 122 n. 9, 96 S.Ct. at 1353 n. 9 (Powell, J., concurring).

specific adoption of a particular phrase and must be satisfied by other guarantees that the note "reflects the witness' own words fully and without distortion." *Goldberg*, 425 U.S. at 112, 96 S.Ct. at 1349 (Stevens, J., concurring).

In this case, I believe that neither the notes in their entirety nor the individual notations of the government attorney meet this test. This is not the rare instance in which the prosecutor's notes constitute verbatim statements. *See Goldberg*, 425 U.S. at 126, 96 S.Ct. at 1355 (Powell, J., concurring) ("Typical interview notes are selective—even episodic—and therefore fall outside of subsection (e)(2).")

D. *Conclusion*

As I do not find that any part of attorney Labrum's notes constitute a statement of the government witness Simmons within the meaning of 18 U.S.C. § 3500(e), the United States Attorney's decision not to disclose his notes to the defense was not in violation of the Jencks Act. I need not reach the remaining issues raised by the parties and I will deny defendants' joint motion to set aside the verdict or in the alternative for a new trial.